# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
)
UNION PACIFIC EMERGENCY )
PHYSICIANS, LLC )
1A Burton Hills Boulevard )
Nashville, TN 37215 )
)
)
               _Plaintiff,_ )
)
v. )
)
XAVIER BECERRA, in his official )
capacity as Secretary of the United States )
Department of Health and Human Services )
200 Independence Avenue, S.W. )
Hubert H. Humphrey Building )
Washington, D.C. 20201 )
)
               _Defendant._ )
_____ )

## COMPLAINT FOR MANDAMUS AND DECLARATORY RELIEF

1.     This is a deeply concerning case in which an administrative law judge tasked with reviewing Union Pacific Emergency Physicians, LLC's ("Union Pacific's") Medicare appeal refused his statutory mandate to conduct a hearing on Union Pacific's opposition to a demand for over half a million dollars, plus interest, in alleged overpayments.

2.     In 2017, following a medical records review, Union Pacific received a demand letter from its Medicare Administrative Contractor ("MAC") seeking repayment of $973,674.15 in alleged Medicare overpayments.  Union Pacific submitted a request for redetermination of that demand, along with documentation in support of its claims.  Following its review of that submission, the MAC issued a partially favorable redetermination and reduced the amount demanded from Union Pacific to a little over half a million dollars, plus interest.

3.      In response, Union Pacific properly filed an appeal with a Qualified Independent Contractor ("QIC").  Yet when the QIC issued its decision, it sent the decision to a lockbox that Union Pacific had closed.  As a result, and due to the failure of the third-party monitoring the lockbox on Union Pacific's behalf, Union Pacific did not learn of the QIC's decision until after receiving a subsequent demand letter from the MAC.

4.      Upon receiving that demand letter, Union Pacific requested a copy of the QIC's decision.  One day after receiving the QIC decision, Union Pacific filed a Request for Hearing with an administrative law judge ("ALJ"), explaining it had only just received the QIC's decision. Union Pacific's request complied with its regulatory deadline, which requires a party to file a request for hearing within sixty days "from the date the party **receives** notice of the QIC's reconsideration."  42 C.F.R § 405.1014(c) (emphasis added).

5.      Yet instead of conducting the requested hearing, the ALJ held that Union Pacific's Request for Hearing was untimely and no good cause existed to extend the time for Union Pacific to request a hearing.  On Union Pacific's motion to vacate that ruling, the ALJ doubled down on his order, refusing to acknowledge – much less analyze – the substantial evidence Union Pacific submitted in support of its requests.

6.      The ALJ's refusal to acknowledge that Union Pacific timely filed its request for hearing – and would be entitled to an extension of time for good cause in any event – is arbitrary and capricious, unlawful, and deprives Union Pacific of its rightful Medicare payments without due process of law.  While Union Pacific attempted to appeal this issue to the Medicare Appeals Council, more than a year has passed since it filed its timely appeal.  As a result, Union Pacific has no choice but to turn now to this Court for relief.

## JURISDICTION & VENUE

7.     The District Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 405(g) & (h) (incorporated into the Medicare Act by 42 U.S.C. § 1395ff(b)(1)(A)), which allows courts to review "final decision[s] of the [Secretary] made after a hearing."

8.     The District Court further has jurisdiction over this action pursuant to 28 U.S.C. § 1361, which states "[t]he district courts shall have original jurisdiction over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

9.     The District Court further has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

10.     Union Pacific brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*

11.     The amount in controversy is more than $600,000.

12.     Venue is proper in this Court because Union Pacific no longer resides, or has its principal place of business, in any judicial district.  *See* 28 U.S.C. § 1391(c)(2) (stating a plaintiff "reside[s] . . . only in the judicial district in which it maintains its principal place of business").  Union Pacific does not conduct any business in any state.  As a result, this action is properly filed in the District Court of the United States for the District of Columbia.  42 U.S.C. § 405(g); 42 C.F.R. § 405.1136(b).

## PARTIES

13.     Plaintiff Union Pacific was a Medicare provider incorporated in Wyoming that specialized in emergency medicine.  Union Pacific ceased operations on December 31, 2016.

14.     Defendant Xavier Becerra is sued in his official capacity as the Secretary of the Department of Health and Human Services ("HHS").  42 C.F.R. § 405.1136(d)(1).  HHS is the governmental department that contains the Centers for Medicare & Medicaid Services ("CMS"), the agency within HHS that is responsible for the administration of the Medicare and Medicaid programs.

**MEDICARE APPEALS PROCESS**

15.     A MAC is a private health care insurer that has been awarded by CMS a contract to process Medicare Part A and Part B (A/B) medical claims or Durable Medical Equipment (DME) claims for Medicare Fee-For-Service (FFS) beneficiaries in a geographic jurisdiction.  A MAC may perform activities, included but not limited to, processing claims, handling provider reimbursement services and auditing institutional provider cost reports, handling redetermination requests, and reviewing medical record for selected claims.

16.     If a MAC denies or limits payment on a claim, there is a four-step appeal process.  *First*, a provider may seek redetermination from an individual at the MAC.  42 U.S.C. § 1395ff; 42 C.F.R. § 405.904(a)(2).

17.     *Second*, if its initial effort is unsuccessful, a provider may seek reconsideration by a QIC.  42 U.S.C. § 1395ff(b) & (c); 42 C.F.R. § 405.904(a)(2).

18.     *Third*, a party may request a hearing before an ALJ.  42 U.S.C. §§ 1395ff(b)(1)(E) & (d)(1)(A); 42 C.F.R. § 405.1016.  Once a party requests a hearing with the ALJ, "an administrative law judge shall conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing."  42 U.S.C. § 1395ff(d)(1)(A).

19.     An appeal of a QIC Reconsideration Decision to an ALJ must be filed within sixty calendar days "from the date the party receives notice of the QIC's reconsideration."  42 C.F.R §

405.1014(c).  If the request for hearing or review of a QIC Reconsideration Decision is not filed within sixty days, an appellant may receive an extension for "good cause."  42 C.F.R. § 405.942(b)(2) & (3).  In determining whether a party has "good cause" for missing a deadline, the ALJ considers "the circumstances that kept the party from making the request on time," including whether the party "receive[d] notice of the determination or decision."  *Id.*

20.     The ALJ is to issue its decision within 90 days.  42 U.S.C. § 1395ff(d)(1); 42 C.F.R. § 405.1016.  Unfortunately, over the past decade, the average processing time for ALJ review has ballooned from 134.5 days in 2012 to 1,259.7 days – more than three years – in 2021.[1]  If the ALJ fails to rule within 90 days, the party requesting the hearing may request review by the Medicare Appeals Council.  42 U.S.C. § 1395ff(d)(3); 42 C.F.R. § 405.1016.

21.     *Fourth*, a party may appeal to the Medicare Appeals Council, which conducts a *de novo* review of the ALJ decision and must issue its own decision within 90 days.  42 U.S.C. § 1395ff(d)(2); 42 C.F.R. § 405.1100.  If the Medicare Appeals Council fails to issue a decision within 90 days, "the party requesting the hearing may seek judicial review, notwithstanding any requirements for a hearing for purposes of the party's right to such judicial review."  42 U.S.C. § 1395ff(d)(3); *see* 42 C.F.R. § 405.1132.

## FACTUAL ALLEGATIONS

### *Union Pacific Receives A Demand For $1 Million In Alleged Overpayments*

22.     On December 23, 2016, Union Pacific received a records request issued by NCI - AdvanceMed Corporation ("AdvanceMed"), a Zone 2 Program Integrity Contractor ("ZPIC"), seeking certain medical records.

---

[1] U.S. Department of Health and Human Services, *Average Processing Time*, *available at* https://www.hhs.gov/about/agencies/omha/about/current-workload/average-processing-time-by-fiscal-year/index.html (last visited June 14, 2023).

23.     AdvanceMed's request and subsequent review was focused on a random sample of fifty (50) claims that Union Pacific submitted and coded with certain evaluation and management (E/M) codes, *i.e*., claims coded 99284 (4), 99285 (41), or 99291 (5), as well as any ancillary codes. Union Pacific provided the requested records to AdvanceMed.

24.     Following its review of the fifty (50) claims, AdvanceMed found that the documentation submitted by Union Pacific for certain of the claims did not support payment at rates reserved for the higher-level E/M codes that Union Pacific included on the claims.

25.     By letter dated April 5, 2017, AdvanceMed down-coded those claims and recommended recoupment of an overpayment, as well as an extrapolation applied to the universe of claims that Union Pacific submitted for the period audited.

26.     Noridian Administrative Services ("NAS"), the MAC, subsequently issued a Demand Letter requesting a refund in the aggregate amount of $973,674.15.

### Union Pacific Wins Partial Redetermination

27.     On July 6, 2017, Union Pacific submitted a Request for Redetermination to Noridian.  With its submission, Union Pacific also provided an appeal package that explained why the services subject to these claims met the coverage criteria for the E/M codes included on the claims.

28.     By letter dated October 13, 2017, NAS issued a partially favorable Redetermination Decision in response to Union Pacific's appeal and sent a corrected Demand Letter to Union Pacific.  NAS reduced the overpayment demand to $583,105.00, with interest in the amount of $27,092.62, for a total of $610,197.62.

29.     Although the Medicare Redetermination letter was dated October 13, 2017, Union Pacific did not receive it internally until November 8, 2017.

### *Union Pacific Appeals To QIC – But Does Not Receive Its Decision*

30.     On November 13, 2017, Union Pacific filed a second level appeal with a QIC, C2C Innovative Solutions, Inc. ("C2C").  Union Pacific argued that the medical records provided sufficient information to support the higher levels of E/M codes that Union Pacific included on the claims.  Union Pacific again resubmitted the documentation supporting its position that the services subject to these claims met the coverage criteria for the E/M codes included on the claims.

31.     To its surprise, on April 5, 2018, Union Pacific's Compliance Department received a demand letter, dated February 14, 2018, from NAS in connection with the ongoing review of the subject claims.  Through NAS' demand letter, Union Pacific learned – for the first time – that the QIC had apparently made an unfavorable determination in connection with its appeal.

32.     Union Pacific immediately investigated when and how the QIC communicated its decision.  During that investigation, Union Pacific discovered that the QIC had issued an unfavorable Reconsideration Decision letter, dated January 16, 2018.[2]  Both the January QIC letter and NAS' February letter were delivered to Union Pacific's post office box, on February 15, 2018, and March 1, 2018, respectively, and were processed by a third-party vendor that monitored Union Pacific's P.O. box.  However, Union Pacific had ceased operations on December 31, 2016 and subsequently closed that lockbox, and Union Pacific's vendor did not timely forward correspondence delivered after this time to Union Pacific.  Union Pacific ultimately located the QIC's letter on April 9, 2018.

---

[2]  The overpayment amount remained the same, but that interest had increased to $45,557.62, for a total demand of $628,662.62.

*Union Pacific Submits A Timely Request For Hearing*

33.     On April 10, 2018, a day after Union Pacific actually received the QIC's Reconsideration Decision, Union Pacific submitted a request for a hearing with an ALJ (the "Request for Hearing").

34.     This Request for Hearing was timely because Union Pacific first received the QIC's Reconsideration Decision on April 9, 2018, and the Request for Hearing was submitted within 60 days – indeed, on the next day.

35.     Given the issues with timely receipt of correspondence, and to ensure that Union Pacific remained aware of the progress of this matter, Union Pacific began to regularly monitor the status of its hearing request through the Appeals Status Lookup on the HHS.gov website.  On February 3, 2021, during one of its routine checks, Union Pacific learned that the case was assigned to Administrative Law Judge Brian Butler.  A member of the Union Pacific Compliance team called HHS' Adjudication Team to update Union Pacific's correspondence address to ensure that correspondence from the ALJ would reach Union Pacific.  Per the instructions received, Union Pacific also faxed a written request for an address change that same day.

36.     On October 15, 2021, during one of Union Pacific's routine status checks of the HHS.gov website, it learned for the first time that the case was closed on September 29, 2021, after Judge Butler's decision was mailed, apparently, that same day.  Union Pacific again called HHS' Adjudication Team and notified them that Union Pacific had not received any written communication from Judge Butler and asked for a copy of any communication to be sent via email or fax.

37.     On October 19, 2021, Union Pacific received a copy of Judge Butler's decision, via fax.  Although Union Pacific subsequently learned, in connection with this appeal, that the

September 29, 2021 decision was sent to Union Pacific, it did not receive the decision until the October 19, 2021 fax.  The ALJ's decision is attached as Exhibit 1.

### The ALJ Issues An Unfavorable Ruling

38.     In his September 29, 2021, decision, Judge Butler found that Union Pacific's Request for Hearing was not timely filed, and there was no good cause to extend the filing deadline. In reaching that conclusion, he noted that Union Pacific informed him that it did not receive the reconsideration notice until April 9, 2018.  But rather than accept that as the date from which the deadline to appeal would run, Judge Butler stated that he had requested additional information from Union Pacific explaining why the appeal was "late."  Judge Butler did not specify how or when he made this request, including to whom or where the request was directed.  Union Pacific did not receive any such request, and to this day has never seen a copy of such a request.

39.     To preserve its appeal rights, Union Pacific filed both a Request for Review to the Medicare Appeals Council and a Request to Vacate Dismissal to the ALJ on December 3, 2021. (Attached as Exhibits 2 and 3, respectively).   Union Pacific attached to both submissions a declaration from Jay Hendricks, the Vice President of Compliance at Envision Healthcare, an affiliate of Union Pacific.  Mr. Hendricks attached the relevant correspondence between Union Pacific, the QIC, and the ALJ.  Mr. Hendricks explained that Union Pacific did not timely receive the QIC Reconsideration Decision or the ALJ Decision, and never received any request for additional information from the ALJ.

40.     On August 31, 2022, Union Pacific received a terse, one-page order denying its Request to Vacate Dismissal.  (Attached as Exhibit 4).  The ALJ noted that "Appellant submitted a declaration indicating it did not receive the reconsideration decision until April 2018 due to an oversight by a third-party vendor which did not forward the mailing in a timely manner."  But the

ALJ concluded – without explanation or analysis – "[t]his explanation does not establish good cause for the untimely filing."

41.     Union Pacific has not received a response – much less a decision – from the Medicare Appeals Council.  As a result, Union Pacific filed with the Medicare Appeals Council a request to escalate this dispute to federal court in accordance with 42 C.F.R. § 405.1132 on April 19, 2023.  (Attached as Exhibit 5).  Union Pacific did not receive a response to its request.

**COUNT I**
**Violation of the Administrative Procedure Act**

42.      Union Pacific realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 41 of this Complaint.

43.     Under the APA, courts shall "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

44.     Union Pacific has a clear right to ALJ review of the QIC decision.  Once Union Pacific requested ALJ review, the ALJ was required to "conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing."  42 U.S.C. § 1395ff(d)(1).

45.     Union Pacific's Request for Hearing to the ALJ for review was timely.  Union Pacific requested an appeal of its QIC's Reconsideration Decision one day after it "reciev[ed] notice of the QIC's reconsideration," well within the applicable time period.  42 C.F.R § 405.1014(c).

46.     Despite Union Pacific's timely Request for Hearing, the ALJ unlawfully refused to "conduct a hearing" and "render a decision on such hearing."

47.     Courts shall further "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law;" "contrary to constitutional right, power, privilege," "without observance of procedure required by law," "unsupported by substantial evidence," or "unwarranted by the facts."

48.     The ALJ's initial determination that Union Pacific untimely filed its Request for Hearing was arbitrary and capricious, not in accordance with law, unsupported by substantial evidence, unwarranted by the facts, and contrary to Union Pacific's due process rights.  Union Pacific filed its request one day after *receipt* of the QIC reconsideration decision, and well within the statutory and regulatory timeframes.  Union Pacific was therefore entitled to a hearing before the ALJ.

49.     Alternatively, the ALJ's initial determination that there was no good cause to extend the time in which to file a hearing request was arbitrary and capricious, not in accordance with law, unsupported by substantial evidence, and unwarranted by the facts.  In his one page order, the ALJ failed to analyze the substantial evidence supporting good cause for an extension of time, including that Union Pacific, through no fault of its own, did not initially receive the QIC's reconsideration decision.  The ALJ also failed to provide any support for his assertion that he requested additional information from Union Pacific, including the date on which he sent such a request or to whom he sent it.  Union Pacific has never received such a request.

50.     The ALJ's Order denying Union Pacific's Request to Vacate the dismissal also violates the APA.  In this one page order, the ALJ again failed to explain how a request for hearing filed one day after receipt of the QIC reconsideration decision was untimely, and again failed to acknowledge or analyze the substantial evidence submitted by Union Pacific establishing good cause for extending the deadline in any event.

51.     Union Pacific is entitled to declaratory relief, as well as all other available remedies and relief, as set forth in its Prayer for Relief.

### COUNT II
### Violation of Procedural Due Process

52.     Union Pacific realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 41 of this Complaint.

53.     Union Pacific has a valid property interest in receiving Medicare payments for services rendered.

54.     Union Pacific has been denied its property interest in its claims payments without the process it is entitled to by law.  Once Union Pacific requested ALJ review, the ALJ was required to "conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing."  42 U.S.C. § 1395ff(d)(1).

55.     Union Pacific's Request for Hearing to the ALJ for review was timely.  Union Pacific requested an appeal of its QIC's Reconsideration Decision one day after it "reciev[ed] notice of the QIC's reconsideration," well within the regulatory time period.  42 C.F.R § 405.1014(c).

56.     Despite Union Pacific's timely Request for Hearing, the ALJ unlawfully refused to "conduct a hearing" and "render a decision on such hearing."

57.     Instead, the ALJ summarily found both that Union Pacific's submission was untimely and that no good cause existed to extend the filing deadline.  The ALJ came to its decision without analyzing whether "good cause" existed to extend the filing deadline under 42 C.F.R. § 405.942(b)(2) & (3).

58.     As a result, Defendants contend Union Pacific owes hundreds of thousands of dollars in alleged overpayments and interest.

59.     Union Pacific is entitled to declaratory relief, as well as all other available remedies and relief, as set forth in its Prayer for Relief.

## COUNT III
### Mandamus

60.     Union Pacific realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 41 of this Complaint.

61.     Mandamus relief is appropriate where (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) no other adequate remedy exists.

62.     Union Pacific has a clear right to ALJ review of the QIC decision.  Once Union Pacific requested ALJ review, the ALJ was required to "conduct and conclude a hearing on a decision of a qualified independent contractor . . . and render a decision on such hearing."  42 U.S.C. § 1395ff(d)(1).

63.     Union Pacific's Request for Hearing to the ALJ for review was timely.  Union Pacific requested an appeal of its QIC's Reconsideration Decision one day after it "receiv[ed] notice of the QIC's reconsideration," well within the applicable time period.  42 C.F.R § 405.1014(c).

64.     Despite Union Pacific's timely Request for Hearing, the ALJ unlawfully refused to "conduct a hearing" and "render a decision on such hearing."

65.     Instead, the ALJ summarily found both that Union Pacific's Request for Hearing was untimely and that no good cause existed to extend the filing deadline.

66.     Judicial intervention is the only adequate remedy available to Union Pacific.  The Medicare Appeals Council has failed to comply with its statutory obligations and issue a ruling ordering an ALJ hearing.  And while the Medicare Appeals Council waits months or years to review decisions, interest continues to accrue on the alleged overpayment.

67.     Union Pacific is entitled to mandamus relief, as well as all other available remedies and relief, as set forth in its Prayer for Relief.

## COUNT IV
## Declaratory Judgment Pursuant to 28 U.S.C. § 2201

68.    Union Pacific realleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 41 of this Complaint.

69.    An actual and justiciable controversy exists between the parties concerning whether Union Pacific timely submitted its Request for Hearing and, alternatively, whether there was good cause to extend the time for Union Pacific to do so.

70.    Pursuant to 28 U.S.C. § 2201, a judicial determination of the respective rights of the parties is necessary and appropriate under these circumstances.

71.    Union Pacific is entitled to declaratory relief, as well as all other available remedies and relief, as set forth in its Prayer for Relief

## PRAYER FOR RELIEF

WHEREFORE, Union Pacific respectfully requests the Court to grant the following relief:

1.  A declaration that:

- Union Pacific timely filed its Request for Hearing before the ALJ;

- Alternatively, there was good cause to extend the deadline for filing the Request for Hearing before the ALJ, and Union Pacific timely filed its Request for Hearing before the ALJ within that extended deadline;

- The decision of the ALJ that Union Pacific failed timely to file its Request for Hearing violates the APA;

- Alternatively, the decision of the ALJ that there is no good cause to extend the deadline for filing the Request for Hearing before the ALJ violates the APA;

- Defendant's refusal to conduct a hearing before the ALJ violates Union Pacific's procedural due process rights;

2.  An order vacating the ALJ's dismissal and directing Defendants to assign an ALJ to conduct a hearing on Union Pacific's claims;

3.  Mandamus relief directing Defendants to assign an ALJ to conduct a hearing on Union Pacific's claims;

4.  Costs of suit herein, as permitted by law;

5.  Attorney's fees, as permitted by law;

6.  Pre-judgment, post-judgment, and other interest on all monetary damages, as permitted by law; and

7.  Any and all such further relief that the Court deems just and proper.


Dated: June 16, 2023

Respectfully submitted,

By:

Paul Werner (D.C. Bar #482637)
Michael Paddock (D.C. Bar #496254)
Hannah Wigger (D.C. Bar #208851)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave N.W.
Washington, D.C.
Tel. 202-747-1900
pwerner@sheppardmullin.com
mpaddock@sheppardmullin.com
hwigger@sheppardmullin.com

Danielle Vrabie (*Pro hac vice* application forthcoming)
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
30 Rockefeller Plz.
New York, NY 10112
Tel. 212-653-8700
dvrabie@sheppardmullin.com

*Counsel for Union Pacific Emergency Physicians, LLC*