# EXHIBIT 2

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
202.747.1900 main
202.747.1901 fax
www.sheppardmullin.com

202.747.1931 direct
pwerner@sheppardmullin.com

December 3, 2021

**VIA FEDERAL EXPRESS**

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington D.C.  20201

Re:   OMHA Appeal No. 3-6993688620
       Appellant:  Union Pacific Emergency Physicians, LLC
       Re:  Multiple Beneficiaries
       ALJ Decision, dated Sept. 29, 2021

Dear Medicare Appeals Council:

We are counsel to Union Pacific Emergency Physicians, LLC ("Union Pacific") and its authorized representative.  *See* Exhibit 1 attached hereto.  By this letter, and pursuant to 42 C.F.R. § 405.1100(a), Union Pacific hereby requests review by the Medicare Appeals Council of the Administrative Law Judge ("ALJ") decision, dated September 29, 2021, attached as Exhibit A (the "ALJ Decision") to the Declaration of Jay Hendricks, dated December 3, 2021 (the "Hendricks Dec."), submitted herewith.  The ALJ Decision dismissed Union Pacific's request for a hearing on the grounds that the request was not filed within the stated time period and that good cause was not found to extend the deadline.

<u>Summary of Requested Relief</u>

Union Pacific respectfully requests the Medicare Appeals Council to conclude that Union Pacific's request for a hearing before the ALJ was timely filed and that, in any event, "good cause" exists for an extension.  Union Pacific directs the Medicare Appeals Council to the documentation, attached as Exhibits B, G, and J,[1] submitted in connection with Union Pacific's prior appeals, demonstrating support for the claims at issue in Union Pacific's appeal. In light of this support, Union Pacific respectfully requests the Medicare Appeals counsel make a favorable determination or, alternatively, send the matter back to the ALJ to consider the merits of Union Pacific's appeal. Finally, Union Pacific requests that any interest that has accrued since the date of the QIC Reconsideration Decision be waived.

---

[1] All lettered exhibits are attached to the Hendricks Dec.

Department of Health and Human Services
December 3, 2021
Page 2

**The Procedural History**

This appeal pertains to a December 23, 2016 records request of Union Pacific issued by NCI – AdvanceMed Corporation, Zone 2 Program Integrity Contractor ("ZPIC") ("AdvanceMed") for seeking certain medical records dates of service ("DOS") between December 24, 2013 through November 1, 2016.  Hendricks Dec. at ¶ 4; Exhibit C.  AdvanceMed's request and subsequent review was focused on a random sample of fifty (50) claims coded with certain evaluation and management (E/M) codes, *i.e.*, claims coded 99284 (4), 99285 (41), or 99291 (5), as well as any ancillary codes applicable to the claims audited.  Union Pacific provided the requested records to AdvanceMed.  Hendricks Dec. at ¶¶ 5-6; Exhibit D.

Following its review of the fifty (50) claims, AdvanceMed found that the documentation submitted by Union Pacific for certain of the claims did not support payment at rates reserved for the higher-level E/M codes included on the claims.  Hendricks Dec. at ¶ 7.  By letter dated April 5, 2017, AdvanceMed down-coded those claims and recommended recoupment of an overpayment resulting from the down-coding, as well as an extrapolation applied to the universe of claims for the period audited.  Exhibit E.  Noridian Administrative Services ("NAS"), the Medicare Administrative Contractor ("MAC"), subsequently issued a Demand Letter requesting a refund in the aggregate amount of $973,674.15.  Hendricks Dec. at ¶ 8; Exhibit F.  On July 6, 2017, Union Pacific submitted a Request for Redetermination to Noridian.  With its submission, Union Pacific also provided an appeal package that explained why the services subject to these claims met the coverage criteria for the E/M codes included on the claims.  Hendricks Dec. at ¶ 9; Exhibit G.

By letter dated October 13, 2017,[2] Noridian issued a partially favorable Redetermination Decision in response to Union Pacific's appeal and a corrected Demand Letter was sent to Union Pacific.  The overpayment demand was reduced to $583,105.00, with interest in the amount of $27,092.62, for a total of $610,197.62.  Hendricks Dec. at ¶ 10; Exhibits H; I.

On November 13, 2017, Union Pacific filed a second level appeal with a Qualified Independent Contractor ("QIC"), C2C Innovative Solutions, Inc. ("C2C").  Union Pacific argued that the medical records provided sufficient information to support the higher levels of E/M codes included on the claims.  Union Pacific again resubmitted the documentation supporting its position that the services subject to these claims met the coverage criteria for the E/M codes included on the claims.  Hendricks Dec. at ¶ 12; Exhibit J.

On April 5, 2018, Union Pacific's Compliance Department received a Demand Letter from Noridian in connection with the ongoing review of the subject claims.  This Demand Letter was dated February 14, 2018.  Hendricks Dec. at ¶ 13; Exhibit L.  Upon its April 5, 2018 receipt of the Demand Letter, Union Pacific became aware – for the first time – that a determination was made in connection with the QIC appeal.  Following an internal investigation, Union Pacific discovered that the QIC had issued an unfavorable Reconsideration Decision letter, dated January 16, 2018.[3]

---

[2] Although the Medicare Redetermination letter was dated October 13, 2017, it was not received internally until November 8, 2017.  Hendrick's Dec. at ¶ 11.

[3] The overpayment amount remained the same, but that interest had increased to $45,557.62, for a total demand of $628,662.62.

Exhibit K. Both the January QIC letter and February Noridian letter were delivered to Union Pacific's post office box, on February 15, 2018 and March 1, 2018 respectively, and processed by a third party vendor that monitored Union Pacific's PO box. However, Union Pacific had ceased operations on December 31, 2016 and subsequently closed its lockbox, and the vendor did not timely forward correspondence delivered after this time to Union Pacific. The QIC's letter was ultimately located on April 9, 2018. Hendricks Dec. at ¶¶ 14-16; Exhibit M.

On April 10, 2018, a day after Union Pacific actually received the QIC's Reconsideration Decision, Union Pacific submitted a request for a hearing with an ALJ (the "Request for Hearing"). Hendricks Dec. at ¶ 18; Exhibit B. This Request was timely because Union Pacific first became aware of the QIC's Reconsideration Decision on April 9, 2018 and the Request for Hearing was submitted within 60 days—indeed, on the next day.

Given the issues with timely receipt of correspondence, and to ensure that Union Pacific remained aware of the progress of this matter in a timely fashion, Union Pacific began to regularly monitor the status of its hearing request through the Appeals Status Lookup on the HHS.gov website. Hendricks Dec. at ¶ 19; *see, e.g.*, Exhibit N. On February 3, 2021, during one of its routine checks, Union Pacific learned that the case was assigned to Administrative Law Judge Brian Butler. A member of the Union Pacific Compliance team called the Adjudication Team to update the correspondence address to ensure correspondence from the ALJ would reach Union Pacific. Per the instructions received, Union Pacific also faxed a written request for an address change that same day. Hendricks Dec. at ¶ 20; Exhibit O.

On October 15, 2021, during one of Union Pacific's routine status checks of the HHS.gov website, it learned for the first time that the case was closed on September 29, 2021 after Judge Butler's decision was mailed that same day. Hendricks Dec. at ¶ 21. Union Pacific again called the Adjudication Team and notified them that Union Pacific had not received any written communication from Judge Butler and asked for a copy to be sent via email or fax. *Id.* at ¶ 22. On October 19, 2021, Union Pacific received a copy of Judge Butler's decision, via fax. Exhibit A is a copy of that decision with the fax time stamp indicating receipt on October 19, 2021. Although it has subsequently learned, in connection with this appeal, that the September 29, 2021 decision was sent to Union Pacific, it did not receive the decision until the October 19, 2021 fax. *Id.* at ¶ 23. The ALJ Decision also references correspondence that was sent to Union Pacific sometime between the date of the Request for Hearing and the ALJ Decision "requesting more specific information why the request for hearing was filed late." Until it received the decision, Union Pacific was wholly unaware of that correspondence and to this day still has not received a copy of it. *Id.* at ¶ 24.

### The ALJ's Decision

In a decision dated September 29, 2021 (which Union Pacific received on October 19, 2021, as laid out above), Judge Butler dismissed Union Pacific's Request for Hearing on the grounds that the request was not filed within the appropriate time period, and that good cause was not found to extend the deadline. In reaching that conclusion, he noted that Union Pacific represented that it did not receive the reconsideration notice until April 9, 2018. But rather than accept that as the date triggering the appeal period, he apparently requested additional information from Union

Department of Health and Human Services
December 3, 2021
Page 4

Pacific bearing on why the appeal was "late." Judge Butler does not specify how or when he made his request, including to whom or where the request was directed. But Union Pacific did not receive that communication, and to this day has never seen a copy of it. And because Union Pacific did not receive – and therefore did not respond to – Judge Butler's follow up request, he found that Union Pacific had failed to show good cause to extend the appeal deadline. Accordingly, he ruled that "the request for an Administrative Law Judge hearing is hereby dismissed."

**<u>Union Pacific's Request Was Timely Filed and/or "Good Cause" Exists for an Extension</u>**

### A. The Request For Hearing Was Timely Filed

An appeal of a QIC Reconsideration Decision must be filed within sixty (60) calendar days "from the date the party *receives* notice of the QIC's reconsideration." 42 C.F.R § 405.1014(c) (emphasis added). That is, by the clear terms of the rule, the critical date is not when the notice of reconsideration is sent, but when it is received. That is reasonable and fair given a party must actually receive a notice of reconsideration in order to consider and pursue its right to appeal. An interpretation that, by contrast, keys the critical deadline to when notice is merely sent violates the plain words and spirit of the rule and operates as a trap to deny parties important agency appeal rights.

Here, although the QIC Reconsideration Decision was dated January 16, 2018, Union Pacific did not actually receive the document until April 9, 2018. Accordingly, by rule, the sixty-day time period only started on April 9, 2018. Because Union Pacific submitted its Request for Hearing the day after – on April 10, 2018 – the Request was timely.

### B. "Good Cause" Exists Here For An Extension

Even if the Medicare Appeal Council finds that the sixty-day time-period should be calculated from the date of the QIC Reconsideration Decision – instead of when Union Pacific received it – "good cause" exists for an extension. Indeed, if the request for hearing or review of a QIC Reconsideration Decision is not filed within sixty (60) days, an appellant may receive an extension for "good cause." As Judge Butler correctly noted, 42 C.F.R. § 405.942(b)(2) and (3) guides the determination of whether "good cause" exists thereby warranting the extension of a filing deadline. Specifically, § 405.942(b)(2) states that:

> In determining if a party has good cause for missing a deadline to request a redetermination, the contractor considers -
>
> *<u>(i) The circumstances that kept the party from making the request on time</u>*;
> (ii) If the contractor's action(s) misled the party; and
> (iii) If the party had or has any physical, mental, educational, or linguistic limitations, including any lack of facility with the English language, that prevented the party from filing a timely request or from understanding or knowing about the need to file a timely request.

Department of Health and Human Services
December 3, 2021
Page 5

    42 C.F.R. § 405.942(b)(2) (emphasis added).

    § 405.942(b)(3) provides examples of circumstances where good cause may be found to exist, though the list of examples is not exhaustive or exclusive. These examples include:

> (i) The party was prevented by serious illness from contacting the contractor in person, in writing, or through a friend, relative, or other person; or
> (ii) The party had a death or serious illness in his or her immediate family; or
> (iii) Important records of the party were destroyed or damaged by fire or other accidental cause; or
> (iv) The contractor gave the party incorrect or incomplete information about when and how to request a redetermination; or
> ***(v) The party did not receive notice of the determination or decision***; or
> (vi) The party sent the request to a Government agency in good faith within the time limit, and the request did not reach the appropriate contractor until after the time period to file a request expired.

42 C.F.R. § 405.942(b)(3) (emphasis added).

Thus, under § 405.942(b)(2), "circumstances that kept [Union Pacific] from making the request on time" should be considered in connection with a "good cause" determination. Union Pacific has established, as laid out above and supported by the exhibits submitted herewith, that it did not receive and was thus unaware until April 9, 2018 that the QIC had issued its Redetermination Decision on January 16, 2018. Union Pacific therefore simply could not have filed a request for a hearing within 60 days of when the notice was sent because it did not learn of the Redetermination Decision until that deadline had already expired. Once it learned of the Decision on April 9, 2018, however, it immediately submitted a request for a hearing on the very next day, April 10, 2018. In that written request, Union Pacific explained that it did not receive the Redetermination Decision until April 9, 2018. *See* Hendricks Dec. at ¶¶ 13-18.

The ALJ Decision also refers to a letter that was sent to Union Pacific "requesting more specific information why the request for hearing was filed late." Union Pacific did not receive that communication and, even as of the date of this letter, has not seen such a letter.

Moreover, § 405.942(b)(3) provides examples of circumstances where "good cause" may be found, one of which is when a "party did not receive notice of the determination or decision." That example follows directly from the text of the rule, is supported by basic notions of equity and fair play, is properly available in circumstances just like those presented here where Union Pacific did not receive the notice until months after it was supposedly sent.

For all of these reasons, Union Pacific respectfully requests the Medicare Appeals Council to find that Union Pacific's Request for Hearing before the ALJ was timely filed and that, in any event,

Department of Health and Human Services
December 3, 2021
Page 6

there is "good cause" for an extension. Union Pacific also requests that the Medicare Appeals Council review the documentation, attached as Exhibits C; H; K, demonstrating support for the coding of the claims at issue in the instant appeal, and make a favorable determination or, alternatively, send the matter back to the ALJ to consider Union Pacific's appeal on the merits. Union Pacific further requests that any interest that has accrued since the date of the QIC Reconsideration Decision be waived.

Very truly yours,

Paul A. Werner
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

DocuSign Envelope ID: 62F41501-D7A5-434E-B79A-B5405B7AD84D

# DECLARATION OF JAY HENDRICKS

I, Jay Hendricks, declare and state as follows:

1. I am Vice President of Compliance at Envision Healthcare and am competent under the law to give this declaration and unless stated have personal knowledge of the facts stated herein.

2. Attached hereto as Exhibit A is a true and correct copy of the Order of Dismissal issued by Administrative Law Judge ("ALJ") Brian Butler dismissing Union Pacific's Request for Hearing.

3. Attached hereto as Exhibit B is a true and correct copy of Union Pacific's request for a hearing with an ALJ (the "Request for Hearing").

4. Attached hereto as Exhibit C is a true and correct copy of a records request, dated December 23, 2016 issued by NCI – AdvanceMed Corporation, Zone 2 Program Integrity Contractor ("ZPIC") ("AdvanceMed") to Union Pacific seeking certain medical records for dates of service ("DOS") between December 24, 2013 through November 1, 2016.

5. AdvanceMed's request and subsequent review was focused on a random sample of fifty (50) claims coded with certain evaluation and management (E/M) codes, *i.e.*, claims coded 99284 (4), 99285 (41), or 99291 (5), as well as any ancillary codes applicable to the claims audited.

6. Union Pacific provided the requested records to AdvanceMed. Attached hereto as Exhibit D is a true and correct copy of an Acknowledgement of Completion of Medical Records Request, dated January 23, 2017.

7. Following its review of the fifty (50) claims, AdvanceMed found that the documentation submitted by Union Pacific for certain of the claims did not support payment at rates reserved for the higher-level E/M codes included on the claims. By letter dated April 5, 2017,

1

AdvanceMed down-coded those claims and recommended recoupment of an overpayment resulting from the down-coding, as well as an extrapolation applied to the universe of claims for the time period audited.  Attached hereto as Exhibit E is a true and correct copy of a letter dated April 5, 2017 from AdvanceMed to Union Pacific regarding Post-payment Review Results and Provider Education.

8. Noridian Administrative Services ("NAS"), the Medicare Administrative Contractor ("MAC"), subsequently issued a Demand Letter requesting a refund in the aggregate amount of $973,674.15.  Attached hereto as Exhibit F is a demand letter dated April 6, 2017 from the Center for Medicare & Medicaid Services ("CMS") to Union Pacific.

9. On July 6, 2017, Union Pacific submitted a Request for Redetermination to Noridian.  With its submission, Union Pacific also provided an appeal package that explained why the services subject to these claims met the coverage criteria for the E/M codes included on the claims.  Attached hereto as Exhibit G is a true and correct copy of that submission.

10. By letter dated October 13, 2017, Noridian issued a partially favorable Redetermination Decision in response to Union Pacific's appeal and a corrected Demand Letter was sent to Union Pacific.  The overpayment demand was reduced to $583,105.00, with interest in the amount of $27,092.62, for a total of $610,197.62.  Attached hereto as Exhibits H and I and true and correct copies of the Corrected Demand Letter and Redetermination Decision, respectively.

11. Although the Medicare Redetermination letter was dated October 13, 2017, it was not received internally until November 8, 2017.

12. On November 13, 2017, Union Pacific filed a second level appeal with a Qualified Independent Contractor ("QIC"), C2C Innovative Solutions, Inc. ("C2C").  Union Pacific argued

2

that the medical records provided sufficient information to support the higher levels of E/M codes included on the claims. Union Pacific again resubmitted the documentation supporting its position that the services subject to these claims met the coverage criteria for the E/M codes included on the claims. Attached hereto as Exhibit J is a true and correct copy of that submission.

13. On April 5, 2018, Union Pacific's Compliance Department received a Demand Letter from Noridian in connection with the ongoing review of the subject claims. This Demand Letter was dated February 14, 2018. Attached hereto as Exhibit L is a true and correct copy of the Demand Letter, dated February 14, 2018.

14. Upon its April 5, 2018 receipt of the Demand Letter, Union Pacific became aware – for the first time – that a determination was made in connection with the QIC appeal. Following an internal investigation, Union Pacific discovered that the QIC had issued an unfavorable Reconsideration Decision letter, dated January 16, 2018.[1] Attached hereto as Exhibit K is a true and correct copy of that Reconsideration Decision letter, dated January 16, 2018.

15. Both the January QIC letter and February Noridian letter were delivered to Union Pacific's post office box, on February 15, 2018 and March 1, 2018 respectively, and processed by a third party vendor that monitored Union Pacific's PO box.

16. However, Union Pacific had ceased operations on December 31, 2016 and subsequently closed its lockbox, and the vendor did not timely forward correspondence delivered after this time to Union Pacific. The QIC's letter dated January 16, 2018 was ultimately located on April 9, 2018.

17. Attached hereto as Exhibit M is a true and correct copy of an internal email, dated April 9, 2018 in connection with inquiries related to non-receipt of the QIC's letter.

---

[1] The overpayment amount remained the same, but that interest had increased to $45,557.62, for a total demand of $628,662.62.

3

18. On April 10, 2018, a day after Union Pacific actually received the QIC's Reconsideration Decision, Union Pacific submitted a request for a hearing with an ALJ (the "Request for Hearing"). *See* Exhibit B.

19. Given the issues with timely receipt of correspondence, and to ensure that Union Pacific remained aware of the progress of this matter in a timely fashion, Union Pacific began to regularly monitor the status of its hearing request through the Appeals Status Lookup on the HHS.gov website. Attached hereto as Exhibit N are true and correct copies of screenshots of the website from Union Pacific's status checks.

20. On February 3, 2021, during one of its routine checks, Union Pacific learned that the case was assigned to Administrative Law Judge Brian Butler. A member of the Union Pacific Compliance team called the Adjudication Team to update the correspondence address to ensure correspondence from the ALJ would reach Union Pacific. Per the instructions received, Union Pacific also faxed a written request for an address change that same day. Attached hereto as Exhibit O is a true and correct copy of the letter from Union Pacific updating its correspondence contact, dated February 3, 2021.

21. On October 15, 2021, during one of Union Pacific's routine status checks of the HHS.gov website, it learned for the first time that the case was closed on September 29, 2021 after Judge Butler's decision was mailed that same day.

22. Union Pacific again called the Adjudication Team and notified them that Union Pacific had not received any written communication from Judge Butler and asked for a copy to be sent via email or fax.

23. On October 19, 2021, Union Pacific received a copy of Judge Butler's decision, via fax. Exhibit A contains the fax time stamp indicating receipt on October 19, 2021. Although it

4

DocuSign Envelope ID: 62F11501-D7AE-434E-B70A-B5405B7AD84D

has subsequently learned, in connection with this appeal, that the September 29, 2021 decision was sent to Union Pacific, it did not receive the decision until the October 19, 2021 fax.

24. The ALJ Decision also references correspondence that was sent to Union Pacific sometime between the date of the Request for Hearing and the ALJ Decision "requesting more specific information why the request for hearing was filed late." Until it received the decision, Union Pacific was wholly unaware of that correspondence and to this day still has not received a copy of it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 12/3/2021

> DocuSigned by:
> Jay Hendricks
> 492D8F66C51246F...

Jay Hendricks

5